**FILED**

FEB 07 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* [SEALED],<br><br>Plaintiff,<br><br>– Against –<br><br>[SEALED],<br><br>Defendant. | Civil Action No **5:25** **CV** **00247** |

**FALSE CLAIMS ACT**
**COMPLAINT**

and

**JURY DEMAND**

[FILED UNDER SEAL]

**JUDGE PEARSON**

**FILED IN CAMERA AND UNDER SEAL UNDER** **MAG JUDGE KNAPP**
**31 U.S.C. § 3730(b)(2)**
**DO NOT POST ON ECF**
**DO NOT PUT IN PRESS BOX**

Law Offices of Darth M. Newman LLC
1140 Thorn Run Rd, #601
Coraopolis, PA 15108
(412) 436-3443
*Counsel for Plaintiff Relator*

1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BLOCKQUOTE, INC., | Civil Action No _____ |
| Plaintiff, | **FALSE CLAIMS ACT COMPLAINT** |
| v. | and |
| RESERVE CAPITAL GROUP LTD, RESERVE GROUP MANAGEMENT COMPANY, RESERVE CAPITAL GROUP LIMITED PARTNERSHIP, GLC HOLDINGS, LLC, RESERVE CAPITAL II, LLC, RESERVE CAPITAL LLC, R MARK HAMLIN JR TRUST, MARK HAMLIN, RICHARD MARK HAMLIN JR., HAMLIN HOLDINGS, LLC, THE BRENLIN GROUP, LLC, CEP HOLDINGS, TLB INVESTMENT LLC, GREAT LAKES CASTINGS LLC, AMG INDUSTRIES LLC, FORGED PRODUCTS INC., ROMEO RIM INC., SUPERIOR FABRICATION LLC, LEE BRASS FOUNDRY LLC (a/k/a LBF Equity, LLC), FIDELIS HOLDINGS, LLC, INTEGRATED BIOMETRICS LLC, SPARTANBURG STEEL PRODUCTS INC., and SHARPSVILLE CONTAINER CORPORATION. | **JURY DEMAND** **[FILED UNDER SEAL]** |
| Defendants. | |

*Qui tam* plaintiff and Relator Blockquote, Inc., through its undersigned attorney,

hereby brings this action on behalf of the United States of America, against:

- Reserve Capital Group LTD,

- Reserve Group Management Company,

- Reserve Capital Group Limited Partnership,

2

- GLC Holdings, LLC,

- Reserve Capital II, LLC,

- Reserve Capital LLC,

- R Mark Hamlin Jr Trust,

- Mark Hamlin,

- Richard Mark Hamlin  Jr.,

- Hamlin Holdings, LLC,

- The Brenlin Group, LLC,

- CEP holdings,

- TLB Investment LLC,

- Great Lakes Castings LLC,

- AMG Industries LLC,

- Forged Products Inc.,

- Romeo Rim Inc.,

- Superior Fabrication LLC,

- Lee Brass Foundry LLC (a/k/a LBF Equity, LLC),

- Fidelis Holdings, LLC,

- Integrated Biometrics LLC,

- Spartanburg Steel Products Inc., and

- Sharpsville Container Corporation.

3

The claims asserted in this Complaint are based on Defendant(s) submitting, or causing to be submitted, materially false applications for Paycheck Protection Program ("PPP") loan and related forgiveness despite not qualifying for the loans and/or forgiveness of the loans. Defendants' applications included materially false statements or material omissions about the existence of affiliated employees, the fact that Defendants do not qualify as "small" under the relevant SBA standards and alternative size standards, the lack of need for the capital infusion, and the inability to access alternative sources of capital.

The subject PPP loan applications were approved for a total amount of $25,643,432 and were forgiven for a total amount of $24,796,876 that would not otherwise have been paid but for the false claims described herein. The claims are based on the facts and information set forth below.

## TABLE OF CONTENTS

NATURE OF THE CLAIM ............................................................................................... 7

PARTIES ....................................................................................................................... 7

    A.   Relator – Blockquote, Inc. ...................................................................... 7

    B.   The Reserve Group .................................................................................. 7

    C.   Great Lakes Castings LLC ........................................................................ 9

    D.   AMG Industries, LLC ............................................................................... 9

    E.   Forged Products, Inc. ............................................................................. 9

    F.   Romeo Rim, Inc. ................................................................................... 10

    G.   Superior Fabrication Company, LLC ..................................................... 10

    H.   Lee Brass Foundry LLC a/k/a LBF Equity, LLC ...................................... 11

    I.   Fidelis Holdings LLC .............................................................................. 11

    J.   Integrated Biometrics LLC .................................................................... 12

    K.   Spartanburg Steel Products, Inc. ......................................................... 12

    L.   Sharpsville Container Corporation ...................................................... 13

    M.  Mark Hamlin ......................................................................................... 13

    N.   Richard Mark Hamlin Jr. ....................................................................... 13

JURISDICTION AND VENUE ....................................................................................... 14

FACTS ........................................................................................................................ 14

    I.   Governing Law ....................................................................................... 14

        A.   The Federal False Claims Act .......................................................... 14

        B.   The Paycheck Protection Program ................................................. 16

    II.   Violations of the False Claims Act ......................................................... 19

        A.   PPP Loan Applications ..................................................................... 20

        B.   Knowingly False Statements ........................................................... 22

        C.   Liability of the Reserve Group ........................................................ 25

        D.   Liability of Fidelis Holdings LLC ...................................................... 26

        E.   Liability of Mark Hamlin .................................................................. 26

        F.   Liability of Richard Mark Hamlin Jr. ................................................ 26

**CAUSES OF ACTION**........................................................................................................**27**

## NATURE OF THE CLAIM

1. Relator sues Defendants to recover treble damages and civil penalties on behalf of the United States of America for Defendants' false applications for a PPP loan and forgiveness which information was submitted in whole or in part to the Small Business Administration ("SBA") by and through various banking institutions.

2. Defendants knew the PPP loan and forgiveness applications did not meet the established criteria set by the SBA to obtain the PPP loan or forgiveness funds.

3. Defendants engaged in the submission of false claims to the United States in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA").

## PARTIES

### A. Relator – Blockquote, Inc.

4. Blockquote, Inc. is a company based in California that produces public interest research, news reporting and investigations.

### B. The Reserve Group

5. The Reserve Group is the trade name of a family office that operates as a private equity firm primarily investing the wealth of the Hamlin family.

6. The family of entities which compose the Reserve Group include the below named entities each of which is a named Defendant herein and each of which have principal places of business at 3560 W. Market St # 300, Akron, OH 44333 and, with the exception of Hamlin Holdings, LLC which is organized under the laws of the state of

7

Delaware and the R Mark Hamlin Trust which is organized under the laws of the state of Florida, are organized under the laws of the state of Ohio.

     a.   Reserve Capital Group LTD,

     b.   Reserve Group Management Company,

     c.   Reserve Capital Group Limited Partnership,

     d.   GLC Holdings, LLC,

     e.   Reserve Capital II, LLC,

     f.   Reserve Capital LLC,

     g.   R Mark Hamlin Jr Trust,

     h.   Hamlin Holdings, LLC,

     i.   The Brenlin Group, LLC,

     j.   CEP holdings,

     k.   TLB Investment, LLC

7.     Together, and at all times relevant here, Reserve Group owned, controlled, and/or directed the business activities (or owned and/or controlled other entities which did so) of Defendant portfolio companies Great Lakes Casting LLC, AMG Industries LLC, Great Lakes Castings LLC, AMG Industries LLC, Forged Products, Inc., Romeo Rim Inc., Superior Fabrication LLC, Lee Brass Foundry LLC, Integrated Biometrics LLC, Spartanburg Steel Products Inc., and Sharpsville Container Corporation which each applied for and obtained PPP loan funds and forgiveness to which they were not entitled or eligible.

8

## C.     **Great Lakes Castings LLC**

8.      Great Lakes Castings LLC is a limited liability company organized under the laws of the state of Ohio with a principal place of business at 12970 Ransom St, Holland, MI 49424.

9.      Great Lakes Castings Great Lakes Castings obtained first and second round loans and forgiveness totaling $4,955,509 to which it was not entitled.

10.     Great Lakes Castings was owned and/or controlled by the Reserve Group at the time its loan and forgiveness were approved.

## D.     **AMG Industries, LLC**

11.     AMG Industries, LLC is a limited liability company organized under the laws of the state of Ohio with a principal place of business at 200 Commerce Dr, Mt Vernon, OH 43050.

12.     AMG Industries obtained first and second round loans and forgiveness totaling $2,644,932 to which it was not entitled.

13.     AMG Industries was owned and/or controlled by the Reserve Group at the time its loan and forgiveness were approved.

## E.     **Forged Products, Inc.**

14.     Forged Products, Inc. is a corporation organized under the laws of the state of Texas with a mailing address of 6505 N Houston Rosslyn Rd Houston, TX 77091-1006

9

15.     Forged Products obtained first and second round loans and forgiveness totaling $1,7817,506 to which it was not entitled.

16.     Forged Products was owned and/or controlled by the Reserve Group at the time its loan and forgiveness were approved.

## F.     Romeo Rim, Inc.

17.     Romeo Rim, Inc. is a corporation organized under the laws of the state of Nevada with a principal place of business at 74000 Van Dyke Rd, Bruce Township, MI 48065.

18.     Romeo Rim obtained first and second round loans and forgiveness totaling $3,248,121 to which it was not entitled.

19.     Romeo Rim was owned and/or controlled by the Reserve Group at the time its loan and forgiveness were approved.

## G.     Superior Fabrication Company, LLC

20.     Superior Fabrication Company, LLC is a limited liability company organized under the laws of the state of Ohio with a principal place of business at 17499 S Dolan St, Kincheloe, MI 49788.

21.     Superior Fabrication Company obtained first and second round loans but only the first round loan is recorded as being forgiven in the amount of $1,308,901.

22.     Superior Fabrication Company was not entitled to either loan or any forgiveness.

10

23.     Superior Fabrication Company was owned and/or controlled by the Reserve Group at the time its loans and forgiveness were approved.

## H.     **Lee Brass Foundry LLC a/k/a LBF Equity, LLC**

24.     Lee Brass Foundry LLC was a limited liability company organized under the laws of the state of Ohio which changed its name to LBF Equity LLC in or around April 2023.

25.     Lee Brass Foundry has a principal address at 560 W Market Street Ste 300 Akron, OH 44333.

26.     Lee Brass Foundry obtained first and second round loans and forgiveness totaling $3,695,228 to which it was not entitled.

27.     Lee Brass Foundry was owned and/or controlled by the Reserve Group at the time its loan and forgiveness were approved.

28.     Lee Brass Foundry was subsequently sold to Defendant Fidelis Holdings, LLC which changed the name to LBF Equity LLC.

## I.     **Fidelis Holdings LLC**

29.     Fidelis Holdings is a limited liability company organized under the laws of the state of Michigan with a principal place of business at 30700 Telegraph Rd., Ste. 3475 Bingham Farms, MI 48025.

30.     Fidelis Holdings purchased Lee Brass Foundry after Lee Brass Foundry obtained its loan and forgiveness and is therefore directly responsible and liable for the

11

false PPP loan and forgiveness applications and monies received by Lee Brass Foundry only.

### J.     Integrated Biometrics LLC

31.     Integrated Biometrics LLC is a limited liability company organized under the laws of the state of Delaware with a principal place of business at 121 Broadcast Dr, Spartanburg, SC 29303.

32.     Integrated Biometrics obtained first and second round loans and forgiveness totaling $898,789 to which it was not entitled.

33.     Integrated Biometrics was owned and/or controlled by the Reserve Group at the time its loan and forgiveness were approved.

### K.     Spartanburg Steel Products, Inc.

34.     Spartanburg Steel Products is a corporation organized under the laws of the state of South Carolina with a principal place of business at 1290 New Cut Rd, Spartanburg, SC 29303.

35.     Spartanburg Steel Products obtained a first round loan and forgiveness totaling $5,763,496 to which it was not entitled.

36.     Spartanburg Steel Products was owned and/or controlled by the Reserve Group at the time its loan and forgiveness were approved.

## L.    Sharpsville Container Corporation

37.    Sharpsville Container Corporation is a corporation organized under the laws of the state of Ohio with a principal place of business at 600 Main St, Sharpsville, PA 16150.

38.    Sharpsville Container obtained a first round loan and forgiveness totaling $564,394 to which it was not entitled.

39.    Sharpsville Container was owned and/or controlled by the Reserve Group at the time its loan and forgiveness were approved.

## M.    Mark Hamlin

40.    Mark Hamlin is an individual who, upon information and belief, is a resident and domiciliary of the state of Ohio.

41.    Mark Hamlin is the CEO of the Reserve Group and personally owns and/or manages at least some of the portfolio companies named as Defendants herein which obtained PPP loans and forgiveness to which they were not entitled.

42.    Upon information and belief, Mark Hamlin has an equity or other beneficial interest in the Reserve Group itself.

## N.    Richard Mark Hamlin Jr.

43.    Richard Mark Hamlin Jr. is an individual who, upon information and belief, is a resident and domiciliary of the state of Ohio.

44.    Richard Mark Hamlin Jr. is an Executive Vice President of the Reserve Group and personally owns and/or manages at least some of the portfolio companies

13

named as Defendants herein which obtained PPP loans and forgiveness to which they were not entitled.

45. Upon information and belief, Richard Mark Hamlin Jr. has an equity or other beneficial interest in the Reserve Group itself.

## JURISDICTION AND VENUE

46. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1345 because this action involves a federal question and the United States is plaintiff. This Court also has subject matter jurisdiction under 31 U.S.C. § 3732(a).

47. The Court may exercise personal jurisdiction over Defendants under 31 U.S.C. § 3732(a). The Court has personal jurisdiction over Defendants because, by virtue of the scheme described herein, they transact business within this District.

48. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) & (c) because Defendants transact business or can be found within this District and a substantial part of the events establishing the alleged claims arose in this District.

49. Under 31 U.S.C. § 3730(b)(2), this Complaint was filed in camera and under seal and shall not be served on Defendants until the Court so orders.

## FACTS

### I. Governing Law

#### A. The Federal False Claims Act

50. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or

14

approval," "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or conspires to do so.  31 U.S.C. § 3729(a)(1).

51.     As of the date of filing, any person found to have violated these provisions is liable for a civil penalty of not less than $13,9468 and not more than $27,894 for each such violation, plus three times the damage sustained by the Government.

52.     The FCA imposes liability where conduct is "in reckless disregard of the truth or falsity of the information" and clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).

53.     The FCA also broadly defines a "claim" to include "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that - ... is made to a contractor, grantee, or other recipient if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest ... " 31 U.S.C. § 3729(b)(2)(A).

54.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to sue on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any defendant. The complaint remains under seal while the Government conducts an investigation of the allegations and determines whether to intervene. 31 U.S.C. §3730(b).

15

## B.     The Paycheck Protection Program

55.     The Paycheck Protection Program ("PPP") is the United States Government business loan program established in 2020 through the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to help certain businesses, self-employed workers, sole proprietors, certain nonprofit organizations, veterans' organizations, and tribal businesses to continue paying their workers. The program is implemented by the U.S. Small Business Administration ("SBA").

56.     The PPP allowed qualified entities to apply for low-interest private loans to pay for their payroll and certain other operating costs. Under the PPP, the allowable amount of a PPP loan was calculated based on the borrowing entity's average monthly payroll costs multiplied by 2.5.[1]

57.     The PPP loan had to be used to cover payroll costs, rent, interest, and utilities.

58.     The loan may be partially or fully forgiven if the business keeps its employee counts and employee wages stable.

59.     The deadline for entities to apply for a PPP loan was initially June 30, 2020, which was later extended to August 8, 2020.

---

[1] *See* How to Calculate Maximum Loan Amounts – by Business Type, U.S. Small Business Administration, (Jun. 26, 2020) https://www.sba.gov/sites/default/files/2020-06/How-to-Calculate-Loan-Amounts-508_1.pdf (last visited September 7, 2022).

16

60.     The PPP was reopened on January 11, 2021. The Program ended on May 31, 2021.[2]

61.     The PPP was added under Section 1102 of the CARES Act by amending Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) *et seq.*, which temporarily permitted the SBA to guarantee 100 percent of the PPP loans.

62.     Section 1106 of the CARES Act, which also amended Section 7(a), further provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

### i.     *Affiliation Rules*

63.     The PPP loan program was designed and intended to benefit small businesses.

64.     For the purposes of first round PPP loans, the relevant statutes and regulations defined small businesses as those entities with 500 or fewer employees.

65.     SBA's existing affiliation rules apply to the PPP loan program's definition of small businesses. In other words, all employees of the entities under the same ownership or control "count" towards the 500-employee limit.

---

[2] *See* Paycheck Protection Program, U.S. SMALL BUSINESS ADMINISTRATION, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program (last visited Dec. 9, 2021).

66.     13 C.F.R. 121.106 (a) sets out how the SBA calculates the number of employees, in pertinent part, as follows:

> (a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, parttime, or other basis. This includes employees obtained from a temporary employee agency, professional employer organization or leasing concern. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern.

67.     The SBA repeatedly clarified that the affiliation rules at 13 C.F.R. § 121.301(f) applied to PPP loans and that for the purposes of counting employees, all foreign and domestic affiliated employees **must** be counted. For example, the SBA's March 12, 2021, FAQs included question 44 on this topic:

> 44. **Question:** How do SBA's affiliation rules at 13 C.F.R. 121.301(f) apply with regard to counting the employees of foreign and U.S. affiliates?
>
> **Answer:** For purposes of the PPP's 500 or fewer employee size standard (or 300 employee size standard for Second Draw PPP Loans and certain entities for First Draw PPP Loans), an applicant **must count all of its employees and the employees of its U.S and foreign affiliates**, absent a waiver of or an exception to the affiliation rules. 13 C.F.R. 121.301(f)(6). Business concerns seeking to qualify for a First Draw PPP Loan as a "small business concern" under section 3 of the Small Business Act (15 U.S.C. 632) on the basis of the employee-based size standard must do the same.

March 12, 2021 SBA FAQs (emphasis added).

68.     The applicable affiliation rules appear at 13 C.F.R. § 121.301.

> Concerns and entities are affiliates of each other when one controls or has the power to control the other, **or a third party or parties controls or has the power to control both**. It does not matter whether control is exercised, so long as the power to control exists.

13 C.F.R. § 121.301(f) (emphasis added).

18

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity.

13 C.F.R. § 121.301(f)(1).

69.     The affiliation rules presented a special problem for certain industries which typically organize themselves as several nominally individual businesses owned or controlled by a single entity.

70.     To address this reality, Congress provided statutory carveouts for certain parts of the hospitality industry and some franchise businesses. *See* 15 U.S.C. § 636(A)(36)(D)(iv).

71.     Importantly, no such carveout exists for any of the Defendants named herein.

72.     The SBA often specifically warned potential borrowers that civil and criminal liability could attach to false applications. *See e.g.,* 85 Fed. Reg. 20811 at 20814 (April 15, 2020).

## II.     <u>**Violations of the False Claims Act**</u>

73.     Defendants violated the False Claims Act by submitting materially false applications and supporting materials in connection with applications for PPP loans and then forgiveness of those loans.

## A.     **PPP Loan Applications**

74.     Defendants applied for and obtained a series of PPP loans and then forgiveness of those loans to which they were not entitled.

75.     The following chart displays the name of the company, the date PPP loans were issued to them, the amount of any PPP loans, the dates and amounts of any forgiveness, and the number of jobs the company reported in connection with each loan.

20

| Company | Loan Date | Amount | Forgiveness Date | Forgiveness Amount | Reported Employees |
|---|---|---|---|---|---|
| Great Lakes Casting | Apr 12, 2020 | $2,909,300 | Jun 11, 2021 | $2,942,139 | 213 |
| Great Lakes Casting | May 11, 2021 | $2,000,000 | Jan 12, 2022 | $2,013,370 | 213 |
| AMG Industries | Apr 15, 2020 | $ 1,414,900 | Aug 16, 2021 | $1,433,765 | 93 |
| AMG Industries | Apr 10, 2021 | $1,200,000 | Mar 23, 2022 | $1,211,167 | 279 |
| Forged Products | Apr 14, 2020 | $882,300 | Oct 20, 2021 | $895,643 | 40 |
| Forged Products | Jun 29, 2021 | $815,700 | Apr 6, 2022 | $821,863 | 28 |
| Romeo Rim | Apr 29, 2020 | $1,630,800 | Jun 11, 2021 | $1,648,694 | 119 |
| Romeo Rim | May 7, 2021 | $1,589,800 | Dec 16, 2021 | $1,599,427 | 102 |
| Superior Fabrication | Apr 12, 2020 | $1,293,700 | June 15, 2021 | $1,308,901 | 96 |
| Superior Fabrication | May 7, 2021 | $1,100,000 | | | 279 |
| Lee Brass Foundry | Apr 13, 2020 | $1,959,220 | June 11, 2021 | $1,981,442 | 144 |
| Lee Brass Foundry | Apr 4, 2021 | $1,700,000 | Jan 28, 2022 | $1,713,786 | 279 |
| Integrated Biometrics | Apr 7, 2020 | $417,278 | June 11, 2021 | $422,135 | 27 |

| Integrated Biometrics | May 8, 2021 | $474,834 | Oct 6, 2021 | $476,654 | 28 |
|---|---|---|---|---|---|
| Spartanburg Steel Products | Apr 28, 2020 | $5,697,500 | June 23, 2021 | $5,763,496 | 333 |
| Sharpsville Container | Apr 13, 2020 | $558,100 | June 11, 2021 | $564,394 | 436 |
| **TOTALS** | | **$25,643,432** | | **$24,796,876** | **1,472[3]** |

## B.     Knowingly False Statements

76. Each of the above-described PPP loan and forgiveness applications constitute false claims.

77. Each of the above-described PPP loan and forgiveness applications are false because they make, at a minimum, the below false statements:

    a. The number of jobs reported do not account for the SBA's affiliation rules and thereby meaningfully and falsely underreport the number of jobs or employees at issue;

    b. Upon information and belief, the applications falsely attest that each company lacks access to other sources of liquidity; and

    c. Upon information and belief, the applications falsely attest to compliance with the PPP program and entitlement to the PPP loan and forgiveness funds.

---

[3] For any company with multiple loans, this total includes the lower of their two reported numbers.

22

### i.   *Too Many Employees*

78.    In reality, each of the Defendant companies that obtained PPP loans are affiliated with each other and with the Reserve Group as the word "affiliation" is defined and used in the relevant SBA regulations.

79.    Counting only the employees listed in the applications listed above, Defendants have at least 1472 employees and none of them can qualify for PPP loan funds or forgiveness.

80.    In addition, through the Reserve Group, each Defendant was affiliated with additional employees.

81.    As a result, none of the Defendant Companies that applied for and received PPP and forgiveness monies qualified for PPP forgiveness making each of the applications false at least insofar as each reported or attested to compliance with the PPP loan and forgiveness program rules, regulations, and laws.

### ii.   *NAICS Size Standards*

82.    The SBA's NAICS size standards provide an alternative metric, either a total annual receipts or alternative number of employees, for determining company size for companies in certain NAICS Code categories.

83.    Just as the proper counting of employees must include the employees of all affiliates, so too must any calculation of annual receipts include the revenue of all affiliates. 13 CFR § 121.104.

23

84. While some of the Defendant companies claimed NAICS Codes subject to alternative size standards, none of those alternative size standards are met here.

85. For example, Superior Fabrication claimed NAICS code 333120 (Construction Machinery Manufacturing) which has a NAICS employee count standard of 1,250.

86. However, the employees listed in the loan applications total 1,472.

87. Additionally, the maximum PPP loan amount is 2.5 times the average total monthly payroll costs incurred in the one-year period before the loan origination date. Defendants received $16,763,098 in first round PPP loans. That amount divided by 2.5 is $6,705,239.20, which represents the average total monthly payroll costs. Twelve times this number is $80,462,870.40 and Defendants' total annual payroll for the locations associated with each loan. If Defendants chose not to take out the maximum loan amount, it would mean their payroll was even larger. Clearly, if defendants had a payroll of more than $80M, then their revenue exceeded any applicable alternative revenue standard at the time they applied for PPP loans.

88. Defendants cannot meet any applicable NAICS size standard here.

89. Naturally, adding the Reserve Group's other sources of affiliated revenue, as required, just emphasizes the point.

90. Regardless of which standard is applied, Defendants did not qualify for the loans or forgiveness they sought and received.

24

### iii.  *Corporate Group Loan Caps*

91.  As of May 4, 2020, no set of entities in the same corporate group could obtain more than $20,000,000 in first round PPP loan funds. 85 Fed. Reg. 26324  (May 4, 2020).

92.  For second round loans, the limit was $4,000,000. March 12, 2021 SBA FAQs at Q16.

93.  Defendants breached the second-round caps.

94.  The Reserve Group corporate group obtained $8,880,334 in second round loan funds or $4,880,334 more than the $4M second round cap. This $4,880,334 should not have been issued.

### C.  **Liability of the Reserve Group**

95.  The collection of corporations, limited liability companies, trusts, general partners, and limited partnerships that compose the private equity conglomerate known as the Reserve Group owns or controls other funds and entities which themselves own or control various portfolio companies including the Defendant companies that took PPP loans.

96.  It is through this ownership and control that the Reserve Group is liable for the false PPP loan and forgiveness applications and monies received by the other named Defendants.

25

**D.      Liability of Fidelis Holdings LLC**

97.      Fidelis Holdings purchased Lee Brass Foundry in 2023 and currently owns that company. Through its current ownership of Lee Brass Foundry, now known as LBF Equity, Fidelis Holdings is liable for the false PPP loan and forgiveness applications and monies received by Lee Brass Foundry only.

**E.      Liability of Mark Hamlin**

98.      Through his position as CEO and his ownership or other equity or beneficial ownership interest in the Reserve Group, Mark Hamlin exercises joint ownership or control of various of the Defendant entities and is therefore personally liable for the false PPP loan and forgiveness applications and monies received by the other named Defendants

**F.      Liability of Richard Mark Hamlin Jr.**

99.      In addition to his position as Executive Vice President and his ownership or other equity or beneficial ownership interest in the Reserve Group, Richard Mark Hamlin Jr. is directly involved in the ownership and/or management of at least some of the other Defendant entities.

100.      For example, he is the Vice President of Forged Products, is the sole manager of GLC Holdings which in turn owns Great Lakes Castings.

101.      Through these joint interests, Richard Mark Hamlin Jr. is personally liable for the false PPP loan and forgiveness applications and monies received by the other named Defendants

26

## CAUSES OF ACTION

### COUNT I
### Violations of the False Claims Act: Presenting or Causing a False Claim
### (31 U.S.C. § 3729(a)(1)(A))
### (All Defendants)

102. The foregoing allegations are repeated and realleged as if fully set forth herein.

103. The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), imposes liability upon those who knowingly present or cause to be presented false claims for payment or approval.

104. Defendants knowingly and willfully violated the False Claims Act by presenting, or causing to be presented, false claims for payment or approval.

105. Specifically, and as alleged in more detail above, Defendants presented, or caused to be presented, materially false applications for PPP loan funds and then for forgiveness of the resulting loans.

106. Defendants certified compliance with applicable PPP laws, rules, and regulations despite not being compliant.

107. Defendants similarly certified the existence of facts which were not true.

108. Defendants knew or should have known (as defined in 31 U.S.C. § 3801(a)(5)) that the facts and certifications to which they attested were not true and that they made, presented, or submitted, or caused to be made, false or fraudulent claims for payment to the government.

109.    Each of the applications submitted or caused to be submitted by Defendants is a separate false and fraudulent claim.

110.    Defendants presented or caed to be presented these claims knowing their falsity, or in deliberate ignorance or reckless disregard that such claims were false.

111.    The United States was unaware of the foregoing circumstances and conduct of Defendants and, in reliance on said false and fraudulent claims, authorized payments to be made to or on behalf of Defendants, made such payments, and has been damaged.

112.    Because of these false or fraudulent claims submitted or caused to be submitted by Defendants, the United States has been damaged in an amount to be determined at trial.

**COUNT II**
**Violations of the False Claims Act:**
**Making, Using, or Causing to be Used a False Record or Statement**
**(31 U.S.C. § 3729(a)(1)(B))**
**(All Defendants)**

113.    The foregoing allegations are repeated and realleged as if fully set forth herein.

114.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), imposes liability upon those who knowingly make, use, or cause to be made or used, false records or statements material to a false or fraudulent claim.

28

115.    Defendants knowingly and willfully violated the False Claims Act by making, using, or causing to be made or used, false records or statements material to false or fraudulent claims.

116.    Specifically, for purposes of obtaining or aiding to obtain PPP loans and then forgiveness of those loans, Defendants made or presented, or caused to be made or presented, to the United States false or fraudulent applications and/or records, knowing these materials to be false or fraudulent, or acting with reckless disregard or deliberate ignorance thereof.

117.    Each application or record submitted to the Government in support of Defendants' above-described false claims is a separate false record or statement and separate violation of 31 U.S.C. § 3729(a)(1)(B).

118.    The United States was unaware of the foregoing circumstances and conduct of Defendants and, in reliance on said false and fraudulent applications and/or records, authorized payments to be made to or on behalf of Defendants, made such payments, and has been damaged.

119.    Because of these false or fraudulent statements submitted or caused to be submitted by Defendants, the United States paid the claims, resulting in damages to the United States in an amount to be determined at trial.

## COUNT III
## Violations of the False Claims Act: Conspiring to Violate the False Claims Act
## (31 U.S.C. § 3729(a)(1)(C))
## (All Defendants other than Fidelis Holdings, LLC)

120. The foregoing allegations are repeated and realleged as if fully set forth herein.

121. The False Claims Act, 31 U.S.C. § 3729(a)(1)(C), imposes liability upon those who conspire to commit a violation of another sub-section of the False Claims Act.

122. Defendants knowingly, in reckless disregard, and/or in deliberate ignorance of the truth conspired between themselves, with their employees and administrators, and others, to violate the False Claims Act.

123. Defendants conspired to submit false and fraudulent claims related to their applications for PPP loan and forgiveness funds and the use of those funds.

124. Defendants did in fact submit false and fraudulent claims for PPP loan funds and forgiveness.

125. As a consequence of their conspiracies, the United States paid money in connection with the forgiveness of the PPP loan when it would not have but for Defendants' unlawful conduct.

126. As a result of this conspiracy, and the resulting false or fraudulent claims submitted or caused to be submitted by Defendants, the United States paid the claim(s), resulting in damages to the United States in an amount to be determined at trial.

30

## COUNT IV
## Violations of the False Claims Act: Obligation to Repay
## (31 U.S.C. § 3729(a)(1)(G))
## (All Defendants)

127. The foregoing allegations are repeated and realleged as if fully set forth herein.

128. The False Claims Act, 31 U.S.C. § 3729(a)(1)(G), imposes liability upon those who knowingly make, use, or cause to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

129. Upon receipt of improperly obtained PPP loan forgiveness funds, Defendants had an obligation to repay and refund to the Government the amounts paid by the Government.

130. Defendants knowingly and willfully violated the False Claims Act by failing to so repay or refund the monies received.

131. The United States was unaware of the foregoing circumstances and conduct of Defendants.

132. Had the government been aware of Defendants' knowing false certifications and knowing failure to return overpayments it would have taken steps to recover them.

133.    The United States has been damaged as a result in an amount to be determined at trial.

**WHEREFORE, Relator, on behalf of himself as well as the United States requests the following relief:**

a.  A judgment against Defendants, joint and several, in an amount equal to all damages due to the Government, including treble damages, under the FCA;

b.  A judgment against Defendants, joint and several, for all civil penalties due to the Government for Defendant's violations of the FCA;

c.  That Relator recover from Defendants, joint and several, all costs of this action, with interest, including the cost to the Government for its expenses related to this action;

d.  That Relator recover from Defendants, joint and several, all reasonable attorneys' fees in bringing this action;

e.  That Relator be awarded the maximum amount of the proceeds of this action as allowed under 31 U.S.C. § 3730, and/or any other applicable provision of law;

f.  That a trial by jury be held on all issues so triable;

g.  An award of pre- and post-judgment interest; and

h.  Such other and further relief to Relator and/or the United States of America as this Court may deem just and proper.

## <u>REQUEST FOR TRIAL BY JURY</u>

Under Rule 38 of the Federal Rules of Civil Procedure, Relator hereby requests a trial by jury.

32

By:

Darth M. Newman
Law Offices of Darth M. Newman LLC
1140 Thorn Run Rd, # 601
Coraopolis, PA 15108
PA ID#: 209448
Telephone:     412-436-3443
Email:          darth@dnewmanlaw.com


*Counsel for Plaintiff Relator*